UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EDDIE J. BRIGGS and
REBECCA BRIGGS                                                                           PLAINTIFFS

V.                                                         CAUSE NO. 3:14-cv-00016-DPJ-FKB

STATE FARM FIRE AND
CASUALTY COMPANY                                                                         DEFENDANT

**ORDER**

This insurance-coverage dispute is before the Court on the following post-trial motions: (1) Defendant's Motion for Review of Clerk's Taxation of Costs [129]; (2) Plaintiffs' Motion for New Trial [131]; and (3) Plaintiffs' Motion to Alter Judgment [133]. For the reasons that follow, all motions are denied.

I.      Background

Plaintiffs Eddie J. and Rebecca Briggs owned a home in Kemper County, Mississippi, that was insured by Defendant State Farm Fire & Casualty Company ("State Farm"). On April 27, 2011, a tornado struck the Briggses' home, causing substantial damage to the residence. The parties disputed whether the home was a total loss and whether State Farm acted in bad faith by tendering an amount less than the cost of replacement. The breach-of-contract case was tried before a jury in a bifurcated proceeding, and on June 4, 2015, the jury returned a $72,521.42 verdict in Plaintiffs' favor. This amount was more than State Farm had offered, but less than the Briggses had claimed.

Following the verdict, State Farm moved for judgment as a matter of law and renewed its previously filed motion for partial summary judgment on "extra contractual and punitive damages." The Court then conducted an evidentiary hearing during which Plaintiffs were given

an opportunity to make their case for extra-contractual and punitive damages. When the hearing concluded, the Court found that Plaintiffs had presented a pocketbook dispute and otherwise failed to show State Farm lacked a reasonably arguable basis for its position. And as such, the Court granted State Farm's renewed motion for judgment and refused to send the case to the jury on extra-contractual or punitive damages. *See* Order [126]. Defendant thereafter challenged taxation of costs [129], and Plaintiffs filed separate motions [131, 135] seeking a new trial as to the Phase II issues and to alter or amend judgment to allow prejudgment interest.

II.     Analysis

    A.     Motion for Review of Clerk's Taxation of Costs

State Farm initially challenged six line items from the Clerk's Taxation of Costs. After considering Plaintiffs' response, State Farm conceded three of those costs but continued to dispute those associated with the deposition transcripts for Eddie and Rebecca Briggs, Jodie Morgan, Wayne Raley, Paul Graham, and Mark Watson.

"The trial judge has great discretion to tax the cost of a deposition if he finds that all or any part of the deposition was necessarily obtained for use in the case." *Nissho Iwai Co. v. Occidental Crude Sales*, 729 F.2d 1530, 1553 (5th Cir. 1984) (citation and internal quotation marks omitted). Costs for transcripts are taxable, even if the depositions are not admitted into evidence at trial. *Id*.

Here, Morgan was the Plaintiffs' expert, and the other deposition transcripts related to individuals State Farm listed on its final witness list. *See* Def.'s Witness List [119]. The Court would expect counsel to use deposition transcripts of listed witnesses to prepare for trial. *See id.* ("Judge O'Conor determined that each of the depositions, whether actually admitted at trial or

not, was necessarily obtained for use in this case.  Even the depositions of witnesses testifying for Nissho were used by counsel to structure their questioning of the witnesses.").  Plaintiffs have sufficiently supported the costs that were awarded.  State Farm's motion is denied.

  B.  Motion for New Trial

Rule 59 of the Federal Rules of Civil Procedure "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).  The rule does not delineate the necessary grounds to support such an order, stating only that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).

Here, the Briggs assert that a new trial is necessary for three reasons:  (1) the Court erred in bifurcating the breach-of-contract claim from the other claims; (2) the Court erred in excluding the "Policyholder's Bill of Rights" from evidence; and (3) the Court erred in failing to send extra-contractual and punitive damages to the jury.

  1.  Method of Bifurcation

Before trial, the Court granted State Farm's motion to bifurcate the breach-of-contract claim from the claims for extra-contractual and punitive damages.  May 22, 2015 Order [110].  Bifurcation is governed by Rule 42(a) of the Federal Rules of Civil Procedure, which states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims . . . ."  Whether to bifurcate is a matter for which the trial court has broad discretion.  *See Rosales v. Honda Motor Co.*, 726 F.2d 259, 261 n.3 (5th Cir. 1984).

In its pretrial motion to bifurcate, State Farm observed that there are differing categories of recovery for plaintiffs in insurance-coverage disputes. As explained in the leading treatise on Mississippi insurance law:

> [T]here are three types of cases in which the insured may recover. In one type, the insured can prove a breach of the insurance contract but cannot prove the insurer lacked an arguable reason for its actions. In those cases, the insured is limited to ordinary contract remedies. In the second type of case, . . . the insured can prove the insurer lacked an arguable reason for denying the claim but cannot prove the insurer's conduct was sufficiently egregious to give rise to punitive damages. [Such cases give rise to extra-contractual damages]. Finally, in a third type of case, . . . the insured can prove not only that the insurer had no arguable reason to deny the claim, but also that the insurer's conduct is sufficiently egregious to warrant imposition of punitive damages.

Jeffery Jackson, Mississippi Practice Series, § 13:21.

There has never been dispute that of these claims, punitive damages must be tried separately. *See* Miss. Code Ann. § 11-1-65(1). So the question before trial was whether to try the second type of case, involving extra-contractual damages, with the breach-of-contract claim or with the punitive-damages claim. The Court chose the latter, and Plaintiffs now contend that the Court erred. Some of their arguments were raised before, others were not.

Starting with familiar ground, Plaintiffs contend that they "were entitled to present at one time all of their evidence on negligence, breach of contract *and bad faith* that would entitle them to recover extra contractual damages for a lower level of wrongful misconduct by State Farm than that required for the recovery of punitive damages." Pls.' Mem. [132] at 10–11 (emphasis added). But Plaintiffs' pretrial objection to bifurcation failed to account for at least three of State Farm's arguments in favor of bifurcation. First, evidence regarding the other claims—alleged bad faith for example—would prejudice State Farm's defense of the breach-of-contract claim. *See* Def.'s Mem. [96] at 5. Second, the extra-contractual and punitive-damages claims were a

natural fit because both required a finding that the insurer breached the contract "without an arguable basis." *Id.* at 13; *see also Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992). And finally, it was more economical to try the breach-of-contract claim first to determine whether a breach even occurred. Def.'s Mem. [96] at 14 (citing Fed. R. Civ. P. 42(a)).

The Court therefore ruled in State Farm's favor, holding that the breach-of-contract claim would be tried first in Phase I and the remaining claims for extra-contractual and punitive damages would be tried in Phase II, if necessary. May 22, 2015 Order [110] at 2. In doing so, the Court followed a well-recognized practice in this jurisdiction. *See id.* at 2–3 (citing *Politz v. Nationwide Mut. Fire Ins. Co.*, No. 1:08cv18-LTS-RHW, 2009 WL 1505384, at *1 (S.D. Miss. May 28, 2008) (holding that punitive and extra-contractual damages would not be heard during initial breach-of-contract phase)); *see also Remel v. State Farm Fire & Cas. Co.*, Civ. No. 1:07cv126-LTS-RHW, 2009 WL 531862, at *2 (S.D. Miss. Mar. 2, 2009) (holding "the only issue to be tried in phase one is the coverage claim"). The Court still believes that it was within its discretion to bifurcate the case in this manner under Rule 42(a).[1]

Turning to new ground, Plaintiffs argue that at the least they should have been allowed to pursue a simple negligence claim with the breach-of-contract claim, followed by extra-

---

[1] As Plaintiffs observe, Judge Senter noted in *Remel* that the line between coverage issues and claims handling is somewhat blurry. *Id.* at *2. He therefore held that "State Farm may not prevent Plaintiffs from introducing evidence in the first phase of the trial concerning the manner in which the claim was handled." *Id.* at *2. Plaintiffs fault the Court for failing to follow Judge Senter's lead and thereby excluding evidence the jury should have heard. But this Court cited Judge Senter's parallel holding in *Tejedor v. State Farm Fire & Casualty Co.*, on this very point and held that evidence related to claims handling would be admissible. *See* May 22, 2015 Order at 2–3 (citing No. 1:05cv679-LTS-RHW, 2007 WL 162180, at *1 (S.D. Miss. Jan. 16, 2007)). Indeed, the jury heard substantial evidence regarding claims handling.

contractual and punitive-damages phases.  *See* Pls.' Reply [146] at 8–10.[2]  But before trial, it was the Court's impression that the parties viewed the claims as falling within the three categories addressed above:  breach of contract, extra-contractual damages, and punitive damages.  The entire focus of Plaintiffs' opposition to bifurcation tracked that understanding, and they never mentioned a separate negligence claim that could be tried with breach of contract.  *See generally* Pls.' Resp. [102]; *see also* June 18, 2015 Order [126] (also noting that case was tried based on these three classifications).  Likewise, Plaintiffs did not raise this issue during the extensive post-verdict hearing regarding the extra-contractual and punitive-damages claims.  Instead, they argued the case consistent with the Court's understanding, opening with the following statement:

> It is my understanding that consistent with the law, we are now required to place proof before Your Honor in what has been described as an evidentiary hearing to address the question of whether or not this court should allow the jury to consider extra contract actual and/or punitive damages.

Def.'s Resp. [140] Ex. A at 2.

Thus, it was the Court's impression that the "negligence" claim in the Complaint related to Plaintiffs' claim for extra-contractual damages.  The time to raise a contrary position would have been before trial—not after the jury has been disbanded.  Plaintiffs waived this argument and are not entitled to a new trial.

### 2. Refusal to Admit Policyholder's Bill of Rights into Evidence in Phase I

Plaintiffs contend that the Court erred in excluding the "Mississippi Policy Holder Bill of Rights" from evidence.  *See* Pretrial Order [114] Ex. P-158.  The document was allegedly provided with the policy and reads, in relevant part, as follows:

---

[2]They similarly suggest that judgment should not have been entered on such a claim.

> Policyholders shall have the right to request and receive from the insurance company any adjuster reports, engineer reports, contractor reports, statements or documents which are not legally privileged documents that the insurance company prepared, had prepared, or used during its adjustment of the policyholder's claim. A company may keep confidential any documents they prepare in conjunction with a fraud investigation.

State Farm filed a motion in limine [97] seeking to exclude Exhibit P-158 from both phases of the trial. The Court granted the motion in part, holding, "Plaintiffs have yet to show how this policy would be relevant to the breach-of-contract claim in a way that is not substantially outweighed by the risk of unfair prejudice and jury confusion. Accordingly, the motion is granted, without prejudice, as to phase one." May 22, 2015 Order [11] at 5. But the Court rejected State Farm's contention that the exhibit would remain inadmissible in a second phase regarding extra-contractual or punitive damages. *Id.*

Plaintiffs' counsel appropriately reasserted a desire to introduce this document at a sidebar during Phase I. He argued that it buttressed Plaintiffs' contention that State Farm failed to provide sufficiently detailed records supporting its valuation of their claim and that this failure constituted a breach of the contract. But because the exhibit did not seem relevant to the question of whether State Farm failed to pay what was due on the claim, the Court ruled that it would not be admitted in Phase I. The Court remains convinced that the exhibit lacked relevance during Phase I and was otherwise inadmissible for the reasons stated in Rule 403 of the Federal Rules of Evidence.

Even assuming error, "[a] trial judge's ruling on evidentiary matters will not be grounds for a new trial unless a substantial right of a party is adversely affected." *Green v. E.I. DuPont de Nemours Co.*, 207 F.3d 659 (5th Cir. 2000) (citing Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's

7

substantial rights.")). Even a "nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (citation and internal quotation marks omitted). Here, the ruling did not affect Plaintiffs' substantial rights for three reasons.

First, the Briggs seek a new trial as to Phase II. *See* Pls.' Mot. [131] at 4. So the exclusion of this exhibit during Phase I could not affect the decision not to allow a Phase II. Plaintiffs seem to recognize the point and argue in reply that the exhibit is relevant to Phase I because Phase I should have included all claims other than punitive damages. *See* Pls.' Reply [146] at 6. But as stated *supra*, the Court is not convinced that it abused its discretion in bifurcating those claims.

Second, after the verdict, the Court revisited Plaintiffs' contention that State Farm's alleged failure to comply with the Policyholder's Bill of Rights constituted a breach of contract different in nature from the alleged failure to pay the full claim. The Court noted that the Pretrial Order [114] merely referenced the Complaint when describing the breach-of-contract claim and that the Complaint, which was well drafted, did not put State Farm on notice of this type breach. Plaintiffs' counsel confirmed as much when asked.

Third, contrary to Plaintiffs' argument, the Court did not exclude Exhibit P-158 during the evidentiary hearing for Phase II. *See* Def.'s Resp. [140] Ex. A at 1–4 (admitting the evidence). For these reasons, Plaintiffs fail to show that the Court's rulings regarding this document necessitate a new trial.[3]

---

[3] Plaintiffs also argue in reply that the Court erred in excluding testimony from witness J.L. White regarding this exhibit. *See* Pls.' Mem. [146] at 6. It does not appear that Plaintiffs raised that issue in their initial brief, and if not, it is deemed waived. *See Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of . . . the district

3.     Judgment as to Phase II

Plaintiffs argue that the Court erred in withholding Phase II from the jury.  This portion of the motion is likewise denied.

a.     Procedural Issue

Plaintiffs seem to suggest that the Court erroneously granted judgment as a matter of law because it failed to let the jury hear evidence of malfeasance, primarily Exhibit P-158.  As Plaintiffs correctly quote, Rule 50(a) of the Federal Rules of Civil Procedure states:

> If a party has been **fully heard** on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may . . . grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Pls.' Reply [146] at 6 (alteration in original) (quoting Fed. R. Civ. P. 50(a)).  Plaintiffs seem to suggest that Rule 50(a) relief was inappropriate because the jury did not hear all evidence relevant to extra-contractual damages.

If the Court has correctly interpreted the argument, then it is not persuasive and has been waived.  When State Farm initially moved for partial summary judgment on the extra-contractual-damages claims, the Court denied the motion "without prejudice to its right to raise the issue at trial."  March 20, 2015 Order [91] at 3.  State Farm then reurged its motion for partial summary judgment at every appropriate stage of the trial along with its Rule 50(a) motion.  The Court deferred ruling until after the verdict and the evidentiary hearing on the Phase II issues.

---

courts to refuse to consider arguments raised for the first time in reply briefs.").  This argument does not change the result in any event.

9

Not only did Plaintiffs make no objection at any time to this procedure, they agreed to it. *See* Def.'s Resp. [140] Ex. A at 2 ("[W]e would ask the court to make a ruling based on what the court has heard."); *id.* at 3 ("[W]e are now required to place proof before Your Honor in what has been described as an evidentiary hearing to address the question of whether or not this court should allow the jury to consider extra contractual and/or punitive damages."). And once argument began, Plaintiffs urged that "both the motion for a judgment as a matter of law and then the renewed motion for partial summary judgment as to extra contractual and punitive damages should be denied." *Id.* at 72. They did not make the procedural argument they seem to now suggest. Accordingly, if Plaintiffs contend that the Court could not consider the renewed summary-judgment motion on extra-contractual damages or a Rule 50(a) motion at the close of the evidentiary hearing, the issue has been waived.[4]

b. Merits

Plaintiffs argue that based on the evidence presented, the Court should have denied State Farm's motion for judgment on the Phase II issues. The reasons for that ruling were stated at length from the bench, and the Court therefore incorporates those holdings herein by reference. Having reviewed that ruling, the Court is not convinced that it should be vacated. In particular, Plaintiffs continue to take great issue with the use of Xactimate, but the Court has thoroughly addressed those contentions and will not rehash its findings.

That said, the Court will quickly address its holding that this was a "pocketbook dispute." As Plaintiffs note, the Mississippi Supreme Court held in *Fonte v. Audubon Insurance Co.* that

---

[4]In any event, Plaintiffs received an opportunity to fully try the issues. Essentially all of the liability evidence regarding extra-contractual damages was admitted in Phase I, and the two exhibits that were not were admitted and considered during the evidentiary hearing.

"a 'pocketbook dispute' exists when parties are in agreement as to the extent of damage." 8 So. 3d 161, 168 (Miss. 2009). Plaintiffs then argue that they "do not agree, and never have agreed, on the extent of damage." Pls.' Mem. [132] at 17–18.

This Court was aware of and considered *Fonte* before it ruled. But the language upon which Plaintiffs rely cannot be divorced from the facts of that case. *Fonte* presented the typical "wind versus water" issue that often accompanies hurricane-related claims. The court noted that pocketbook disputes exist when "parties are in agreement as to the extent of damage," but then held, "[T]his is simply not the issue in our case today, because the parties do not agree on the extent of the damage subject to the Fontes' policy. The Fontes maintain that the first floor of their home incurred substantial damage *from wind*, while Audubon attributes all the first-floor damage to *storm surge*. *This clearly is a liability dispute*." *Id.* (emphasis added). The Mississippi Supreme Court seemed to equate "agreement as to the extent of damage" to the absence of "a liability dispute." *Id.* In other words, it was not a pocketbook dispute because the parties contested coverage.

Here, unlike *Fonte*, State Farm admits coverage, but the parties take issue with the value of the claim. The same was true in the most recent case on this point, *Dey v. State Farm Mutual Automobile Ins. Co.*, 789 F.3d 629, 634 (5th Cir. 2015). There, the Fifth Circuit held that "the parties were engaged in a disagreement over the value of the claim, a so-called 'pocketbook dispute,' which cannot support a claim for bad faith." *Id.* And, as stated from the bench, Plaintiffs have maintained throughout this litigation that the claim exceeded policy limits whereas State Farm claimed that it did not. The jury concluded that both parties were incorrect in their valuations; the case presented a pocketbook dispute.

11

C.     Motion to Alter or Amend

Plaintiffs seek an order under Rule 59(e) to alter or amend the judgment to allow pre-judgment interest as claimed in the Complaint.

> As a general rule, in actions for a breach of contract of insurance, when the amount which the insured is entitled to under the contract is withheld after payment is due, interest on such amount can be allowed as damages. For interest to be allowed, the amount due must have been liquidated when the claim was originally made, or the denial of the claim must have been frivolous or in bad faith.

*Arcadia Farms P'ship v. Audubon Ins. Co.*, 77 So. 3d 100, 105 (Miss. 2012) (citation and internal quotation marks omitted).

Plaintiffs recognize that their claim was unliquidated and beyond this general rule. *See* Pls.' Mem. [134] at 6. But they note an exception first addressed in *Commercial Union Insurance Co. v. Byrne*, where the court held, "[W]e can envision cases where, in the discretion of the trial court interest should be allowed although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim is unliquidated." 248 So. 2d 777, 783 (Miss. 1971); *see also State Farm Mut. Auto. Ins. Co. v. Bishop*, 329 So. 2d 670, 673 (Miss. 1976) (applying *Byrne* and affirming prejudgment interest where insurer acted arbitrarily and in bad faith).

While *Byrne* may have left open a path to prejudgment interest in the absence of liquidated damages, the actual holding does not support those damages in this case. The issue on appeal was whether the trial court erred in denying prejudgment interest. 248 So. 2d at 783. The Court held that it did not, observing that "where as in this case there is a justifiable dispute as to the amount of the loss, the insured is not entitled to interest until the amount of the claim has

been made certain or liquidated." *Id.*  This Court, having already found a pocketbook dispute and granted judgment on the bad-faith claim, will not apply this exception to the general rule.

III.    Conclusion

The Court has considered all arguments.  Those not addressed would not change the results.  And for the reasons stated, all motions are denied.

**SO ORDERED AND ADJUDGED** this the 26th day of January, 2016.

                                                 s/ *Daniel P. Jordan III*
                                                 UNITED STATES DISTRICT JUDGE